IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRCIT OF OHIO
AKRON DIVISION

**FILED**
12:18 pm May 06 2020
Clerk U.S. District Court
Northern District of Ohio
Akron

| | |
|---|---|
| State ex.rel Aaron L. Jones Sr.<br>Inmate Number:A511-342 | Case Number:_____<br><br>Judge:_____ |
| State ex.rel. Joseph Shine-Johnson<br>Inmate Number:A734-401 | |
| State ex.rel. Rubin Williams<br>Inmate Number:A704-728 | State ex.rel.James Goodson<br>Inmate Number:A728-456 |
| State ex.rel.Connors Jones<br>Inmate Number:A602-082 | State ex.rel.Joshua Cowell<br>Inmate Number:A603-016 |
| State ex.rel. Antonio Henderson<br>Inmate Number:A703-371 | State ex.rel.Abdur-Rahim Peters<br>Inmate Number:A708-853 |
| State ex.rel. Scott Richardson<br>Inmate Number:A743-271 | State ex.rel.Anthony Anderson<br>Inmate Number:A761-487 |
| State ex.rel. Yarsellay Sammie<br>Inmate Number:A748-144 | State ex.rel. Victor Steel<br>Inmate Number:A760-430 |
| State ex.rel.Devon Watkins<br>Inmate Number:A766-657 | State ex.rel.Jason Ferguson<br>Inmate Number:A664-804 |
| State ex.rel.Elliot Eutsey<br>Inmate Number:A750-235 | State ex.rel.Roderick Means<br>Inmate Number:A693-980 |
| State ex.rel Antonio Wingert<br>Inmate Number:A757-222 | State ex.rel. Melvin Hayes Jr.<br>Inmate Number:A731-989 |
| State ex.rel. Leonard Dent<br>Inmate Number:A524-566 | PLAINTIFF(S) et.al |
| State ex.rel.Jarron Earley-Tabor Sr.<br>Inmate Number:A728-503 | Vs.<br>Governor, Mike DeWine<br>Riffe Center<br>77 S. High St. 30th Floor Columbus Ohio 43215<br>&<br>The Ohio Department Of Rehabilitations And Corrections<br>4545 Fisher Rd.<br>Columbus, Ohio 43215<br>DEFENDANT(S) et.al |
| State ex.rel. Ashanti Bunch<br>Inmate Number:A682-208 | |

---

PLAINTIFF(s) CLASS ACTION INJUNCTION PURSUANT TO FED R. CIV. R. PROC. 23 (a) AND (b)(2), IN EXECUTIVE ORDER OF RELEASE ENACTED BY DEFENDANT'S

---

| | |
|---|---|
| Attorney General<br>CRIMINAL/CIVIL DIVISION<br>130 E. Gay St.<br>Columbus, Ohio 43222<br><br>COUNSEL FOR THE DEFENDANTS | INMATES AT THE BELMONT CORRECTIONAL<br>68518 Bannock Rd. S.R. 331<br>P.O. Box 540<br>St. Clairsville, Ohio 43950<br><br>INMTES --- PRO SE |

## MEMORANDUM FOR THIS SUIT/ACTION

 The Plaintiff(s), Respectfully, Mr. Aaron L. Jones Sr.A511-342,Mr. Joseph Shine-Johnson,A734-401,Mr.Rubin Williams,A704-728,Mr.Connors Jones,A602-082,Mr.Antonio Henderson,A703-371,Mr.Yarseaaly Sammie,A748-144,Mr. Scott Richardson,A743-271.Mr. Elliot Eutsey,A750-235,Mr.Antonio Wingert,A757-222,Mr.Leonard Dent,A524-566,Mr.Jarron Earley-Tabor Sr.,A728-503,Mr.Ashanti Bunch,A682-208,Mr.Joshua Cowell,A603-016,Mr.Abdur-Rahim Peters,A708-853,Mr. Anthony Anderson,A761-487.Mr.Victor Steel,A760-430,Mr.Jason Ferguson,A664-804,Mr.Roderick Means,A693-980,Mr.Melvin Hayes Jr.,A731-989 & Mr. Jason Goodson,A728-456, Respectfully Submit This DEMAND For Release AND Compensary Damages, Under The NUMEROUS Violations In This Organization Ran By AND Under The Tutilage Of The Ohio Department Of Rehabilitations And Corrections, Directed Under The Governor Of The State Of Ohio, Mike DeWine.(Herein Defendant(s)). The Plaintiff(s) Action Being Drawn Up By This Trained Paralega In Mr. Jones(A511-342), In Respect To The Lives And Well Being Of 'US' INMATES In This Enviornment Of This Ohio Department Of Rehabilitations And Corrections

   This Paralegal,(WRONGLY CONVICTED INDIVIDUAL) SHALL Establish The Mandates AND Statutes, Administrtional Rules/Codes Being Violated By These Defendant(s) In This Class Action Suit. In, CAPP VS. ATIYEH,495 F.SUPP.802, Similar Situation, Different Circumstances. THese Various Plaintiff(s) REQUEST(s) Hearing(s), Injunctive Relief, AND Compensary Damages Due To Unconstitutional Habitual, Life-Threatening Conditions; In Violation Of Constitutional Rights Of Prisoners. Under OHIO REVISED CODE §2967.18-OVER CROWDING EMERGENCY: EARLY RELEASE AND SENTENCE REDUCTION, NUMEROUS Plaintiff(s) Qualify For An Early Release Due To Over Crowded Situations, AND This COVID-19 Epidemic, That Has NOW Entered This Ohio Department Of Rehabilitations And Corrections. THIRTY-EIGHT CASES Here At Belmont, And THREE (3) DEATHS, While At Marion Correctional There Are A Recorded FIVE (5) Deaths With NO REcourse. THey Does Nothing About This Epidemic. On March 9th 2020, Governor Mike DeWine Announced That THREE (3) People In Ohio Tested Positive For The COVID-19 And Declared A State Of  Emergency. TWO (2) Days AFTER That, Gov. Mike DeWine Announced The Exsistence Of COVID-19's Community Spread In Our State And Further Restricted Large Gatherings Of Ohioans. Dr. Amy Acton, Director Of Ohio's Department Of Health, Conservatively Estimates That 1% Of Ohio's Population Has A Current COVID-19 Infection. To Prevent Further Spread, Ohioan Have Been Asked To Wash Their Hands And Engage In 'SOCIAL DISTANCING' Practice There Are Currently 48,000 People Living In Ohio's Correctional Institutions. These Individuals Are Spread Across 30 Institutions, Most Of Which House Over A THOUSAND INmates. Belmont Houses 2,200 Inmates. These Inmates, Are Housed In VERY TIGHT QUARTERS WHERE, 'SOCIAL DISTANCING' Is IMPRACTICAL OR IMPOSSIBLE. MOREOVER, Other Protective Measures--- Including

Sanitizing -- Are More Logistically Complicated In Our State And Federal Institutions. Ohio Administrative Code: 5120:1-8-04- Housing: Subsection

> A) Full Service Jails SHALL Provide Inmates With Sufficient Space. The Jails SHALL Maintain Documentation Regarding Square Footage And MAXIMUM Occupancy Figures For ALL Housing AND Holding Areas And SHALL Comply With The Following Minimum Requirements:
> 2) Housing Cells
> 3) Dormitory Sleeping Space: Fifty Square Feet Per Occupant Except Forty-Eight Square Feet In Jails Constructed Prior To 1983.
> Wherein, The Formula SHALL Be Based Upon The Requirements Of ¶(A)(2)(a) Of The Rule 5120:1-8-04 Of The Administrative Code.
> C0. Single Cells/Rooms AND Multiple Occupancy Cells/Rooms/ Dormitory's SHALL Have An Air Circulation Of Fifteen Cubic Feet Of Outside OR Recirculated Filtered Air Per Minute, Per Occupant OR As Required By The Local Authority Having Jurisdict ion. Documentation From A Qualified Source SHALL Be Maintained By The Jail Staff.

This Meager Statutory Procedures Are Violated In This Ohio Department Of Rehabilitations And Corrections, Mandated By The Governor, Mike DEWine. Consequently, All Incarcerated People Are At Heightened Risk Of Contracting COVID-19, And Those Who Are Elderly And/Or Suffer From Chronic Medical Conditions. Like Heart Disease, Diabetes, And Lung Disease Are At Even Greater Risk. In Fact, A Professor At The Yale School Of Public Health, Noted In An Article Published In The Hartford Courant That,'[y]ou Can Think Of Our Prisons As Sort Of A Nursing Home With Bars. . ." IF We're Talking About A Similar Aging Population, In Our Jails Here, You're Talking About A Carceral Version Of The SAME Situation As You Have In Washington State [Where Nursing Homes Have Been The Site Of LARGE COVID-19 Outbreaks].

The Public Safety Risks Of COVID-19 Are REAL And Intensifying. Because Of The Unique Risk Of Prison-Based Outbreaks, Along With Potential For Those Outbreaks To Spread Into The Community, Reducing The Number Of People In Ohio's Prisons Can Protect Not Just Those In Prison, But ALL OF US.

This Brief Synopsis, 'DISPLAYS' The Violations, And The Acknowledgment Of Inmates' Demise Under This Pandemic COVID-19 Situation. This Is Where Ohio Revised Code §2921.44-Dereliction Of Duty- Is Charged AGAINST The Defendants, In This Matter,(Mike DeWine, & The ODRC, In This Class Action Lawsuit/Injunction) The Subsections(C)(1)(2)&(5) Are In Violation Towards These Defendants, For Under Said Subsections, It's Emphasized That;

> C). No Officer, Having Charge Of A Detention Facility, SHALL Negligently Do Any Of The Following:
> 1). Allow The Detention Facility To Become Littered OR Unsanatary.
> 2) Fail To Provide Persons Confined In The Detention Facility, With Adequate Food, Clothing, Bedding, Shelter And Medical Attention.
> 5). Fail To Observe ANY Lawful And Reasonable Regulation For The Management Of The Detention Facility. (3)

Being Acknowledged These Factors, The Ohio Department Of Rehabilitations And Corrections (Defendants) Have NOT Engaged In 'SOCIAL DISTANCING', In Fact, They Invoked The **COMPLETE OPPOSITE**. As To Initiate A Disparity In Regard To Human Life & Liberty. For When It Get's Detected, They (ODRC) Wants To 'LOCK US DOWN' To Infect OR Extinguish OUR Exsistence Since COVID-19 Kills People. 'W-H-A-T' Is The Governor & The ODRC'S(Defendant'S) Intentions? Worker In This ODRC Don't Exercise GOOD Hygiene And Prevention. As Mentioned, It's Already 3 Cases HERE, And 1 At Marion Correctional, That 'I' Know About. Thus, This Intention To 'LOCK US DOWN' Is An Assylm Type Approach That Will Likely Extinguish Alot Of Innocent Lives. We Are/Were Sent To Correct A Wrong **NOT** Be Quietly Murdered.

On The 'HOUSING' Situation, Due Dilligence In Spacing Of Incarcerated Inmates At,' Dormatory Institutions' Such As Belmont, Lake Erie, And EVEN Marion Correctional Institution, The 'SPECIFIC Dimensions' Of Space For 'Double-Bunked Inmates' Are As Follows:

<u>Area 1</u>- 576 ft.²
<u>Areas 2-5</u>- 1990 ft.²
<u>Area 6</u>- 528 ft.² (Lake Erie)
Net Space Actually Available As Living Space
Assuming We Can't Live In The Aisles= 3.094 ft.²
(Divided By 142 Inmates-Lake Erie)= 21.8 ft.²
(Divided By 262 Inmates-Belmont)= 11.8 ft.²

---

<u>Using Total Dorm Area</u>
Total Dorm Area = 72' X 61 1/3" =4703 ft.²
Area Taken By Dividers = 503 (Lake Erie)
Net Space =4202 ft.²
(Divided By 142 Inmates-Lake Erie)=29.6 ft.²/Inmate
(Divided By 262 Inmates-Belmont)=16 ft.² /Inmate

---

<u>Uncumbered Living Space</u>
Bunk Area= 30" X 96 X 71 Bunks (Lake Erie) = 1420 ft.²
TV Stand Area= 18" X 18" 71 Bunks (Lake Erie)=160 ft.²
<u>Area 1</u>- 71 ft.X 8ft.= 576 ft.² (lake Erie)
<u>Areas 2-5</u>- 62.2 ft. X 8 ft. X 4 Areas (Lake Erie)= 1990 ft.²
<u>Area 6</u>- 66 ft. X 8 ft.=528 ft. ²
Net Uncumbered Living Space -1677 ft.²
(Divided By 142 Inmates(Lake Erie) =11.8 ft.²/Inmate

---

Clearly, These Dimensions Are NOT In Compliance To <u>O.A.C:5120:1-8-04</u> And The Circumstances Of 'SOCIAL DISTANCING' :NO ROOM To Avoid Contamination AGAINST The Human Whom Only Purpose Was To Pay His Debt For Offenses Ohio Has Charged Them With. The Majority Of These Plaintiff(S) Were Wrongly Convicted And Given Prison Time With **NO** Witness, Victim, OR Evidence Of Their Guilt Beyond A Reasonable Doubt, Deemed From The Case, <u>Thompson Vs. City Of Louisville, 352 U.S. 199</u> At **HN 2**, Implimenting This;

3 (4)

'A City/State Violates A Criminal Defendant's Due Process Rights, By Convictin Him/Her WITHOUT Evidence Of His/Her Guilt.' Then OHIO Just Impliments 'SPECIFIC' Attorneys To Circumvent The 'SHAM LEGAL PROCESS' VIA Ohio Revised Code §2921.52. Utilizing Strickland, As Statutory For Representation, When In Fact, The State Initiates 'SCARE' Tactics To Have Indigent African Americans 'COP' Out To Meager Offenses, To Tarnish ANY Hope Of A Future Succes

In This 'Pandemic' MANY Administrative Rules Are Being Violated. Like 'PERSONAL' Visiting. Many Inmates Family Members May NOT Have The Capable Means Of 'Video Visiting'. So The Inmate Is Basically Up The Perverbial Creek, WITHOUT The Paddle. NOW The Inmates That Pursued Their 'OWN' Justice/Freedom, VIA Administrative Rule 59-LEG-01, Is Basically On, 'ICE', Because Of 'WHAT' (Please Read 'THEIR Solution To This Issue, In The Appendix Section, Of This Action) Everything NOW Requires A 'Cash Slip'. That's What 'OUR' Freedom Comes Down To? A Price? I Feel That's A Form Of 'Extortion'. 'INMATES' Purchas & Recharge These Copy Cards, To Have Them Taken By Staff Members To Use, In Place Of 'YOU', Then Return The Card When Their Done Copying 'YOUR' Work/ Material. What If You Wanted To 'CHANGE' A Format Or Something? They Don't Utilize 'Patience' In Doing Other Peoples Work. What Makes Them Think This Virus, CANNOT Be Transmitted Through Touching Numerous Copy Cards, From Numerous Patrons?

This Pandemic, And Request Is Governed By The Administration Of Executive Order 2020-01D, From Governor Mike DeWine,(Defendant) March 9th, 2020. In Enacting Said Executive Order Implimentation Of Am.Sub.197 Is Initiated, BUT This Injunction Is To Eliminate The Correctional Problem Of The 'OPPOSITION' To The 'SOCIAL DISTANCING' Mandate Given By The Chief Commander AND The Governor, Mike DeWine,(Defendant). The Meaning Of That Was Previously Addressed. For There Is NO 'SOCIAL DISTANCING' Available In These Tight Quarters In This Ohio Department Of Rehabilitations And Corrections Facility's

STATUTORY MANDATE FROM THE CASE, CAPP VS. ATIYEH, 495 F.Supp.802

Remedial Powers- Federal Courts Have Extensive Powers In Fashioning Relief For Constitutional Violations. These Violations Were Explained AND 'DISPLAYED' PRIOR To This Section Of This Action. A Wide Range Of Approaches Have Been Used By Courts In Remedying Unconstitutional Over Crowding At Prisons. Including Limiting The Prison Population To Design Capacity And Prohibiting The Acceptance Of NEW Prisoners UNTIL That Goal Is Reached. Pugh Vs. Locke, 406 F. Supp. 318: Newman Vs. Alabama, 559 F.2d. 283. Costello Vs. Wainwright, 397 F. Supp. 20. In Issuing This Courts Bench Ruling(CAPP), The Reason For Said Decision Was/Is TWO-Fold. The First, Is The Traditionally Strong Belief Of THis Court In The Principle Of Comity And The Neccesity Of Preserving

(5)

STATUTORY MANDATE FROM CAPP VS. ATIYEH,495 F.Supp.802

## REMEDIAL POWERS

Federal Courts Have Extensive Powers In Fashioning Relief For Constitutional Violations. These Violations Were Explained AND 'DISPLAYED' Prior To This Section, Of This Action. A Wide Range Of Approaches Have Been Used By Court's In Remedying Unconstitutional Over Crowding At Prisons, Including, Limiting The Prison Population At Design Capacity And Prohibiting The Acceptance Of NEW Prisoners UNTIL That Goal Is Reached.(Pugh Vs. Locke, 406 F.Supp.318; Newman Vs. Alabama, 559 F.2d 283; Costello Vs. Wainwright, 397 F. Supp. 20) In Issuing This Court's Bench Ruling (CAPP), The Reason For Said Decision Was/IS TWO-Fold. The First, Is The Traditionally Strong Belief Of This Court In The Principles Of Comity And The Necessity Of Preserving A Healthy State-Federal Relationship. Second, Is The Recognition That The Problems Of The Criminal Justice System Are Complex And NOT Readily Susceptible To Resolution By Judicial Decree. But Goodwill, Political Considerations Or Budgetary Constraints Do Not Define The Scope Of Constitutional Protections Or The Duty Of The Court's To Assure Those Protections To ALL Persons Who Posses Them, As Stated On June 27th (1980) IF The State Seeks(AS It MUST) To Operate A Prison System, It '**MUST**' Do So In Constitutionally Permissible Manner. 'LOCKING INMATES DOWN' Denying Medical Care, Adequate Food, & Most Of All 'SOCIAL DISTANCING', Is An Oppressive Approach And An Eighth Amendment Violation AGAINST Cruel And Unusual Punishmen (CAPP) I, Also Stated, However, That I Believe It Was Appropriate That The State Be Given An Opportunity To Put It's OWN House In Order. This Action Gives The Defendant's A Sense Of Urgency BUT Reasonable And Realistic IMMIDIACY, Reduce The Population At EACH Facility That Could Be Reduced Accordingly To Reach Said 'SOCIAL DISTANCING' Guidelines. Starting With THe Plaintiff(s) In THIS Action, For This Institution. These Defendant's (DeWine & ODRC) Are Asked To Have Their Plan INCLUDE Both The Means By Which And A Time Table When The Reductions Are To Be Accomplished, And For The Plan To Suggest Mechanisms By Which Compliance With A Decree Of Injunctive Relief Could Be Asured.

## INJUNCTIVE RELIEF

The Federal Court Will Retain Jurisdiction Over This ENTIRE Matter So As To Insure FULL AndRealistically Prompt Realization Of The Relief Ordered/ Requested. Specifically, Plaintiff(s) Requests Of THIS Honorable Court To Retain Jurisdiction To Amend The Injunctive Order So As To Require Adoption Of ANY OR More Of The Particular Steps Proposed, As Well As Adoption Of Any Other Remedial Method That May Seem To Be Called For By The Circumstances (COVID-19 & 'SOCIAL DISATANCING')

## POPULATION AND CELL SPACE

(CAPP) According To Dr. Verne Cox, Professor Of Psychology At The University Of Texas At Arlington, Testified That When Prisoners Are Housed In Open Dormatory's WITHOUT Privacy Barriers, EVEN 60 Square Feet PER PERSON, Is Inadequate To Avoid Adverse Physical AND Mental Effects. The American Public Health Association REQUIRES 60 Square Feet PER PERSON, In Single Cells, And A Minimum Of 75 Square Feet PER PERSON In Dormatories. Federal Standards For Corrections REQUIRE That Dormatory's Living Units House No More Inmates That Can Be Safely AND Effectively Supervised In A Setting Which Provides At Least 60 Square Feet PER INMATE. NOT In Compliance In The Defendant's Organizations.

## THE EFFECTS OF CROWDING

(CAPP) Over Crowding At These Facility's Has Had A Negative Effect On Nearly Every Aspect Of The Inmates' Lives In These Institutions. As So For Ohio Institutions As Well, With This Decree Of 'SOCIAL DISTANCING'. According To The Expert Medical Witness, Inmates Doubled In Cells Or Sleeping In Large Open Dormatory's In Close Proximity To Other Inmates Face An Increased Risk Of Communication Of Contagious Diseases (AS COVID-19) At The SAME Time, Over Crowding Diminishes The Opportunity's For Inmates To Efectively Deal With Their Frustrations. The Doubling Of Cells, And Decreased Living Space In Dormatory's Results Not Only In A Loss Of Area For Free Movement But Also Of WHATEVER Modicum( A VERY SMALL AMOUNT) Of Privacy And Quiet A Prison Afford (CAPP & THIS MATTER) Indeed, The Increased Potential For Violence Is One Of The Most Significant Effects Of Over Crowding & Being 'TRAPPED' In The Dorm, Opposed To Abiding By This 'SOCIAL DISTANCING' Implimented By The Defendant's(Gov. Mike DeWine & The President Of The United States)AGAIN, Inmates Are NOT Susceptible To REAL 'SOCIAL DISTANCING', BUT ODRC( Defendant's Are In OPPOSITION To Said Executive Order.

The Frictions Which Naturally Attend Being Forced To Live In Close Proximity To Many Other Persons Over A Long Period Of Time, When Combined With Other Stress And Frustrations-Producing Conditions Of The Institution, Generate Tension, Bitterness, Resentment, And Results In A General Deterioration Of Morale Which Increases The Threat Of Violence. Dr. Gualitieri Testified That Severe Over Crowding Prevents The Developement Of Appropriate Social Skills And Leads Instead To Aggressive, Violent, And Destructive Behavior Patterns. Dr. Cox Testified That Studies Of Penal Institutions Reveals That Over Crowding Leads To Depression, Tension, And Increase In Disciplinary Infractions, Assaults, And Suicide Attempts.(CAPP) The Superintendent, Of O.S.P(Oregon) Stated That Large Numbers Of Inmates And High Proportions Of Idleness Significantly Increases The Probabilty Of Violence. As With This COVID-19 Epidemic AND CROWDED (AS OPPOSED TO 'SOCIAL

DISTANCING') Institutions Ran By The Defendant's, A Decree Should Be Implimented To Accomodate 'SOCIAL DISTANCING' In Institutions Housing More Than 200 Plus Inmates PER Dorm/Housing Unit.

## CONCLUSION OF LAW

The Constitution DOES NOT STOP AT THE PRISON GATE, But Rather Inures(To Make Accustomed To Something Undesireable) To The Benefit Of All, Even To Those Citizens Behind Prison Walls. **Battie Vs. Anderson, 447 F.Supp.516,524;** In A Host Of Decisions, Federal Courts Have Recognized Challenges To The Conditions Of Prison Confinement As Valid Constitutional Claims. **Estelle Vs. Gamble, 429 U.S. 97;97 S.Ct. 285.** Central To The Decision Noted Above, And To This Decision,(CAPP), Is The Ambit Of The Eighth Amendment Proscribing Against The Infliction Of Cruel And Unusual Punishment. Federal Courts Have Not Viewed The Eighth Amendment As Static, But Rather As Drawing "IT'S Meaning From The Evolving Standards Of Decency That Mark The Progress Of A Muturing Society." **Trop Vs. Dulles, 356 U.S. 86.** Indeed, The Touchstone Of The Eighth Amendment Is Nothing Less Than The Dignity Of Man. The Amendment Thus Prohibit Not Merely Physically Barbarous Punishment, But Any Penal Measures "THAT TRANSGRESS TODAY'S 'BROAD AND REALISTIC CONCEPTS OF DIGNITY, CIVILIZED STANDARDS, HUMANITY AND DECENCY." **Hatto Vs. Finney, 437 U.S. 678,685.** The Supreme Court Has Recently Stated That The Infliction Of Unecessary Suffering Is Inconsistent With Contemporary Standards Of Decency, And Therefore, Proscribed By The Eighth Amendment. **Estelle Vs. Gamble, 429 U.S. at 102-03.** In Determining Whether The Conditions Of Which Plaintiff's Complain Constitute Cruel And Unusual Punishment, This Court, Like Others Before It, Can Be Guided By The Facts That The Eighth Amendment Is Intended To Protect Inmates From An Inviornment Where Degeneration Is Probable And Self-Improvement Unlikely, Because Of Conditions Which Inflicts Needless Physical OR Mental Suffering. **Battie Vs. Anderson, 564 F.2d 392-93; Ramos Vs. Lamm, 485 F.Supp. 131-32**

## PLAINTIFF(S)

Mr. Aaron L. Jones Sr. Inmate Number A511-342 In This Ohio Penal System. Was Wrongly Convicted With **NO EVIDENCE, NO INVESTIGATION, IN HIS MATTER,** But Was Given Maximum Consecutive Sentences, For Allied Offenses Of Similar Import. Maximum Consecutive Sentences For THIS FIRST TIME OFFENDER, Violation Of Blakely, Apprendi Vs. New Jersey, United States Vs. Booker, AND Cunningham Vs. California. Mr. Jones Was Subsequently Sentenced To TWENTY (20) Years In 2006(14½ Years AGO). He's A Viable Candidate For This Executive Order Of Release, Due To Chronic Medical Conditions As;Bronchitis, Sleep Apnea, Diabetic, AND Artial Fib. This ODRC Has NO Cleaning Apparatus For Cleaning CPAP Machines, For That TOO Is ANOTHER Death Factor.

Mr. Joseph Shine-Johnson, Inmate NumberA734-401, In This Ohio Penal System,

Is ANOTHER Wrongfully Convicted Individual In The Ohio Penal System. Mr. Johnson, Came Into The Penal System, In 2015 (15CR4596) He Has Matters STILL Pending. The Franklin County C.O.A Affirmed His Conviction For Murder, With NO APPERANT Evidence NOR Suspicion Of Evidence. Ohio Has Recently Changed The Self Defense Law To Disprove Self-Defense Beyond A Reasonable Doubt THat Due Process REQUIRES The Burden Of Proof Be Applied To ALL cases Retroactively He Has Served FIVE (5) Years Of This 19 To Life Sentence, That's Contrary To Law. Upon Examining This Individuals Matter, He's A Viable Candidate For This Executive Order Of Release.

    Mr. Rubin Williams, Inmate Number A704-724, In This Ohio Penal System. He Recieved An Eleven (11) Year Sentence For Involuntary Manslaughter, And Trafficking In Drugs. Mr. Williams Came To Prison In 2018, To Serve His Term Of Imprisonment. He Went To Trial In Columbiana County February 25th, 2019, In Case No. 2018CR 155. His Situation, Derived From A Woman Purchasing Drugs, Going To Her Destination, And Overdosing. The States's Key Witness Was The 'ONLY' Evidence That They Used AGAINST Mr. Williams.'HEARSAY IS NOT PERMISSIBLE IN A COURT OF LAW.' Mr. Williams STILL Has An Appeal Pending As Well.

    Mr. Connres Jones, Inmate Number A602-082, Is A Return Individual Behind An Acclaimed Provation/Parole Violation, That Was 'SUPPOSED' To Be For NINE Months. But He Has Served Nine Months TEN Times. He's A Viable Candidate For This Release

    Mr. Antonio Henderson, Inmate Number A703-371, In This Ohio Penal System, Has Served The Majority Of HIS Sentence And Is A Viable Candidate For This Release Mechanism.

    Mr. Scott Richardson, Inmate Number A743-271, In This Ohio Penal System. He Has Served The Majority Of His Staed Term Of Imprisonment, And Is A Viable Candidate For This Release Mechanism.

    Mr. Yarsellay Sammie, Inmate Number A746-144, In This Ohio Penal System, Has Served The Majority Of His Sentence And Is A Viable Candidate For Release Under This Release Mechanism.

    Mr.Devon Watkins, Inmate Number A766-687, In This Ohio Penal System. He Has Served SOME Of His Stated Prison Term, But Is NOT A Trouble Maker, And Would Appreciate A Consideration For Release.

    Mr.Elliott Eutsey, Inmate Number A750-235, In This Ohio Penal System. He Has Served The Majority Of His Time, AND Completed SEVERAL Programs WHILE Incarcerated. TRUELY A Viable Candidate For This Release.

    Mr. Antonio Wingert, Inmate Number A757-222, In This Ohio Penal System. Has Seved The Majority Of His Stated Prison Term And Is A Viable Candidate For The Release Mechanism.

    Mr. Leonard Dent, Inmate Number A524-566, In This Ohio Penal System, Has

Served 14½ Years On His 16 Year Sentence And Has Medical Issues As Well, That Pertain To Diabetes, C.O.P.D, And High Blood Pressure. He Has Completed NUMEROUS Courses WHILE/DURING His Incarceration. He's TRUELY A Viable Candidate For This Release.

Mr. Jarron Eatley-Tabor Sr. INmate Number A728-503, In This Ohio Penal System Has Served The Majority Of His Time, And Is A Viable Candidate For This Release.

Mr. Ashanti Bunch, Inmate Number A682-208, In This Ohio Penal System, Has Served The Majority Of His Stated Prison Sentence And He's A Viable Candidate For This Release, Under The Executive Order Implimented.

Mr. James Goodson, Inmate Number A728-456, Was Sentenced To 5 Years In This Ohio Penal System, He Has Served 3 Years And Seven (7) Months Thus Far, And Is A Viable Candidate For Release Under This Release Mechanism.

Mr. Joshua Cowell, Inmate Number A603-016, In This Ohio Penal System, Has Served The Majority Of His Stated Prison Term, And Has Medical Issues, That Can Contract This COVID-19 Epidemic. Release Is In Order For His Circumstances.

Mr. Abdur-Rahim Peters, Inmate Number A706-853, In This Ohio Penal System Has Served The Majority Of A Sentence That He SHOULD Have NEVER Recieved, But His Action Is Currently In Appeals Mode. But He'd Rather Preoccupy His Health Under House Arrest, INSTEAD Of This Hazordous Enviornment In The ODRC.

Mr. Anthony Anderson, Inmate Number A761-487 In This Ohio Penal System, Has Served The Majority Of His Stated Prison Term, And Is A Viable Candidate For This Release Mechanism.

Mr. Victor Steele Inmate Number A760-430 In This Ohio Penal System, Has Served The Majority Of His Stated Prison Term, But NO ONE Wants To Die In Prison Like This, (under This Epidemic Of COVID-19). He Humbly Requests To Be Released Under The Injunctive Release Mechanism.

Jason Ferguson, Inmate Number A664-804, In This Ohio Penal System, Has Served The Majority Of His Stated Prison Term, And Is A Viable Candidate For This Injunctive Release Mechanism.

Roderick Means Inmate Number A693-980, In This Ohio Penal System, Has Served MORE Than The Majority Of His Stated Prison Term And Is A Viable Candidate For Release Under This Injunctive Release Mechanism.

Melvin Hayes Jr, Inmate Number A731-989, In This Ohio Penal System, Has Served The Majority Of His Stated Prison Term And Is A Viable Candidate For Release.

Mr. Troy Mason, Inmate Number A746-184 In This Ohio Penal System, Has Served The Majority Of His Stated Prison Term, And Is A Viable Candidate For Release.

DeShawn Jenkins Inmate Number A648-339 In This Ohio Penal System, Has Served

The Majority Of His Stated Prison Term And Is A Viable Candidate For Release.

Ronald Henderson Sr. Inmate Number A691-147, In The Ohio Penal System Has Served The Majority Of His Stated Prison Term And Is Currently Awaiting A Crucial Decision, About His Current Release Upcoming.

## CONCLUSION

These Plainitff(s), REQUESTS Of This Honorable Court, To Invoke The DEcree THat Was 'SPOKEN' On The Air Waves From The Defendant,(Governor Mike DeWine) & The Chief Commander) About 'SOCIAL DISTANCING' And The INABILITY To Practice This INCARCERATED.Thus, 'US' INMATES/Plaintiff(s), HUMBLY REQUESTS That This Honorable Court To Have This Release List Begin, By Granting The Releases Of THESE Plaintiff(S), From THIS Injunction,AND Apply A Compensary Settlement Of $5,000 Dollars PER INMATE, To Provide Hospital Care Fees, To Be Checked For ANY Infraction, THat May Have Been Incurred, Behind This Bizarre Way Of Living, OPPOSED To This 'SOCIAL DISTANCING', Implimented From The Governor (Defendant) & The Chief Of Commad.

## CERTIFICATE OF SERVICE

I, Aaron L. Jones Sr.A511-342;Joseph Shine-Johnson,A734-401;Mr.Rubin William A704-728;Mr.Connors Jones,A602-082;Mr.Antonio Henderson,A703-371;Mr.Scott Richardson,A743-271;Mr.Yarsellay Sammie,A748-144;Mr.Devon Watkins,A766-657;Mr. Elliot Eutsey,A750-235;Mr.Antonio Wingert,A757-222;Mr.Leonard Dent,A524-566;Mr Jarron Earley-Tabor Sr.,A728-503;Mr.Ashanti Bunch,A683-208;Mr.Anthiny Anderson A761-487;Mr.Joshua Cowell,A603-016;Mr.Abdur-Rahim Peters,A708-853;Mr.Victor Steel,A760-430;Mr.Jason Ferguson,A664-804;Mr.Roderick Means,A693-980;Mr.Melvin Hayes Jr.,A731-989 & Mr. James Goodson,A728-456, Being INDIGENT Litigants In This Ohio Penal System, At The Belmont Correctional Institution, 68518 Bannock Rd. S.R. 331, St Clairsville, Ohio 43950, Hereby Certifies That On This 26th Day Of April 2020, VIA Mailed This PLAINTIFF(S) CLASS ACTION INJUNCTION PURSUANT TO FED. R. CIV. R. PROC. 23 (a) AND (b)(2), IN EXECUTIVE ORDER OF RELEASE ENACTED BY DEFENDANT'S, To The Clerk Of The United States District Court, For The Northeastern Division Of Ohio, AKRON DIVISION At 2 Main St. Akron Ohio 44308, And Due To Indigence, REQUESTS OF This Clerk To Serve ALL Parties Involved INCLUDING The Attorney General At 130 E. Gayt St. Columbus, Ohio 43215. Plaintiff's ALSO Invokes Civ. R.5:SERVICE Upon This Action, For A FILE-STAMP-AND-RETURN Action Taken On This Injunction.

RESPECTFULLY

*[Signatures]*

Aaron L. Jones Sr.A511-342    Joseph Shine-JohnsonA743-401    Rubin WilliamsA704-728

INF.
Connors JonesA602-082    Antonio HendersonA703-371    Scott RichardsonA743-271

Yarsellay SammieA748-144    Devon WatkinsA766-657    Elliot EutseyA750-235

INF.
Antonio Wingert A757-222    Leonard DentA524-566    Jarron Earley-Tabor A728-503

MUD TO C.House
Ashanti BunchA682-208    James GoodsonA728-456    Joshua CowellA603-016

------------>

| | | |
|---|---|---|
| *[signature]* | MVD To 1 House *[signature]* | *[signature]* |
| Abdur-Rahim Peters A708-853 | Anthony Anderson A761-487 | Victor Steel A760-430 |
| *[signature]* | MVD To 8 House *[signature]* | MVD To 8 House *[signature]* |
| Jason Ferguson A664-804 | Roderick Means A693-980 | Melvin Hayes Jr. A731-989 |

PLAINTIFF(S)
BELMONT CORRECTIONAL INSTITUTION
68518 Bannock Rd. S.R. 331
P.O. Box 540
St. Clairsville, Ohio 43950

| | | |
|---|---|---|
| *[signature]* | *[signature]* | *[signature]* |
| Troy Mason A746-184 | DeShawn Jenkins A648-339 | Ronald Henderson A691-147 |

*[signature]*
ALBERT Whitted
A543385